IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES A. BRACH and
SUSAN F. BRACH,

                                                    OPINION and ORDER

                    Plaintiffs,

                                                    08-cv-211-bbc

          v.

CITY OF WAUSAU,
a Wisconsin Municipal Corporation,
CHIEF OF POLICE JEFFREY HARDEL,
OFFICER JOSEPH ST. AMAND,
OFFICER JUSTIN MICHLEIN,
OFFICER THOMAS PETERSON,

                    Defendants.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

          Plaintiffs James A. Brach and Susan F. Brach are suing defendant City of Wausau and

several police officers involved in plaintiff James Brach's arrest on May 21, 2007.  Plaintiffs

bring this suit pursuant to 42 U.S.C. § 1983 and state law, alleging that defendants violated

_____

          [1]  Although plaintiffs named a "Chief of Police Jeffrey Hinkle," defendants point out,
and plaintiffs acknowledge, that the Wausau Chief of Police is Jeffrey Hardel.  Also,
plaintiffs named additional defendants, Marathon County, Wisconsin, Marathon County
Sheriff Randal Hoenisch, ABC Company and XYZ Insurance Company.  However, I have
dismissed plaintiffs' complaint as to defendants Marathon County and Hoenisch pursuant
to a stipulation between the parties, dkt. #74, and anonymous companies, ABC Company
and XYZ Insurance Company, are not proper defendants.  I have amended the caption
accordingly.

James Brach's Fourth Amendment rights and violated certain state laws when Joseph St. Amand and Justin Michlein injured James during the arrest and defendant Thomas Peterson refused to allow James to wear pants and exposed him to the public wearing only a t-shirt and boxer shorts.

Now before the court is defendants' motion for summary judgment, which I will grant. No reasonable jury could find that defendants Michlein or Peterson violated plaintiff James Brach's Fourth Amendment rights. A jury could find that defendant St. Amand violated plaintiff James Brach's Fourth Amendment rights, but this defendant is entitled to qualified immunity for his conduct during the arrest. As for plaintiffs' state law claims, plaintiffs failed to respond to any of defendants' arguments, which constitutes waiver.

Although I will grant defendants' motion for summary judgment, I cannot rule on plaintiff James Brach's state law claims of assault and lack of supervision because defendants never argued these issues. I note, however, that the grounds for these claims are unclear. Rather than allowing plaintiff to simply proceed to trial on these claims, I will require that plaintiff first submit any arguments and evidence he may have to support these claims. He may have until June 11, 2009 in which to do so.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

2

UNDISPUTED FACTS

A.  The Parties

Plaintiffs James A. and Susan F. Brach are married and live in Wausau, Wisconsin. (Because plaintiffs have the same last name, I will refer to them as "James" and "Susan.") Defendant City of Wausau is a municipality organized under the laws of the State of Wisconsin.  The remaining defendants either are police officers for the City of Wausau or were at times relevant to the complaint.  Defendant Jeffrey Hardel is the Chief of Police, defendants Joseph St. Amand and Thomas Peterson are police officers and defendant Justin Michlein is a former police officer.

B.  The Arrest

On May 21, 2007, defendant St. Amand responded to a complaint from James's neighbor that James was playing loud music.  Defendant St. Amand spoke with James, who agreed to keep his music turned down and leave his neighbor alone.  However, James's neighbor called back shortly afterward to report that James was now threatening him. Defendant St. Amand responded to the call, and James's neighbor told St. Amand that James had knocked on his door, called him a "pussy boy" and threatened to kill him.

Defendant St. Amand knocked on James's door and asked him to step outside. James appeared agitated and smelled of alcohol.  (As James later admitted, he had drunk 5 or 6

3

alcoholic beverages and had ingested morphine and oxycontin that day.) He stepped outside and said, "What the fuck now?" Defendant St. Amand attempted to talk to James about why they were there but James would not listen; he wanted to talk about other problems he was having with his neighbor. Defendant St. Amand told James that he did not want to arrest him but he had to leave his neighbor alone. James said if he was going to get arrested it would be for "something good." Defendant St. Amand told James not to threaten his neighbor and repeated that he did not want to arrest him. In response, James said if he went to jail it "wouldn't be for a threat." During this conversation, Susan heard James getting loud when talking to the officers and went outside to tell him to be quiet.

In light of James's repeated suggestions that he would continue to cause problems with his neighbor, his agitated appearance and his intoxication, defendant St. Amand decided to place James under arrest. He told James he was under arrest and grabbed James's left arm. James said "No, I'm not, fuck you," made a fist with his left hand, tensed up and tried to pull away. By then, defendant Michlein had arrived. He grabbed James's right arm. James tried to pull away. With defendants St. Amand and Michlein on each side of James, they moved him down the stairs and forced him to the ground. James's knees landed on some rocks in a rock garden near the stairs and he yelled out in pain, screaming that he had just had knee surgery. Susan was not present when James landed on the rocks, but at some point she told the officers that James had just had knee replacements and his knees were

4

sensitive.  (The parties dispute whether Susan told the officers before or after he had been forced to the ground.)

James struggled with the officers while they attempted to handcuff him. They had to pull his arms out from under him as he resisted their efforts to handcuff him.  After getting him handcuffed, they lifted him to his feet and walked him to the squad car.  James's knees hurt and he complained that the officers were walking too fast and asked them to slow down. Every time the officers would slow down, James tried to pull away from them.  (The parties dispute whether James was actually "dragged" some of the way to the car.  During the walk to the squad car, James yelled out in pain and anger.

When defendants St. Amand and Michlein brought James to the car, he refused to get in.  (The parties dispute what happened next.  According to plaintiffs, defendant St. Amand grabbed James's hair and "in one sweeping motion," brought James's head down into the area of the car door opening without protecting James's head, striking James's lip on the car door opening.  Then, using his knee, he struck James in the left knee as he tried to force him into the car.  According to defendants, James had wedged himself in the door area of the squad car and defendant St. Amand directed a strike to James's left *thigh*, at which time James twisted loose and hit his own lip.  Defendants acknowledge that defendant St. Amand pulled James's hair when he grabbed James's shoulder, but say that he released the hair and moved his hand to a different part of James's shoulder when James complained.)  James

5

chipped his tooth and cut his lip while getting into the car.  He continued to yell at the officers, in anger and pain.

James still would not get into the squad car, so defendant St. Amand displayed his Taser to James. He "armed" the taser and placed it within three to five inches of plaintiff's chest. Officer St. Amand told James that he would get tased if he did not get in the squad car.  James acquiesced.  After James was in Michlein's squad car, he complained that his handcuffs were too tight. Officer Michlein adjusted James's handcuffs twice in response to James's complaints.

## C.  Medical Care Following the Arrest

Defendant Michlein offered to get an ambulance for James.  James said "fuck you," he was not paying for it.  Defendant St. Amand contacted the on-duty lieutenant who told St. Amand to take James to the emergency room.  Defendant Michlein drove James to the emergency room.  During the ride, James was in pain.  He continued to say "fuck you" and was "going off."  He said that if he ever saw St. Amand again, he would kill him.  Arriving at the hospital, Michlein pulled his squad into the ambulance bay.

When James arrived at the emergency room, defendants St. Amand and Michlein and Aspirous Hospital Security Officer David W. Campbell removed him from the squad car, placing him on a gurney.  James thrashed around, swearing loudly, kicking at the officers and

6

threatening them.  Eventually, James was wheeled into an exam room, where he continued to yell and scream at the police in the emergency room.  Because of his behavior, he was not taken to the x-ray department.  Instead, a portable x-ray machine was brought into the exam room.

While James was handcuffed to the patient table, medical staff examined him with the portable x-ray machine.  His shoes, socks and pants were removed by the medical staff to allow x-rays to be taken. (The parties dispute whether James was also wearing a hospital robe that was removed when x-rays were taken.  James says he was wearing a robe, but defendants say he refused to wear one.)  After the x-rays were taken, James's pants, shoes and socks were not put back on him, leaving him in a t-shirt and boxer shorts.  (The parties dispute certain facts related to why and how James's pants were kept off.  According to plaintiffs, James stopped thrashing about and lifted his legs and his rear to allow hospital personnel to put his pants back on, but once his pants had been pulled up to about his knees, Officer Peterson said something to the effect of "take his pants off" or "keep his pants off."  According to defendants, it was officer Michlein who was going to put James's pants back on him, and officer Peterson told him not to because James was still kicking and "thrashing about.")

After James had had x-rays taken and doctors determined that there were no problems with his knee replacements or his wrists, his handcuffs were removed and he was placed in

a wheelchair still wearing only his shirt and boxer shorts.  On other occasions when James has worn the boxers he was wearing that day, the front of his boxers have opened, exposing his genitalia.  (Plaintiffs attempt to propose as fact that because of James's body type, his boxer shorts would "tend" to open in the front; however, this testimony is inadmissible because plaintiffs have not shown that the affiant is an expert capable of testifying on the typical effects of body types on boxer shorts.)  He was taken back to the ambulance bay to a squad car.   Hospital personnel were in view when James was taken from the emergency room.  (The parties dispute whether members of the general public were as well.)

During his stay at the hospital, James felt pain in his lip, knees, tooth and back area. In addition, he felt embarrassed at being in areas of the hospital visible to the public and recalls people seeing him at certain times.

## D.  <u>Booking</u>

James was placed in the squad car (still wearing only his shorts and t-shirt) and taken to the Marathon County Sheriff's Department.  Upon arrival he was placed in a wheelchair and taken to a booking desk in the sheriff's office.  Defendants St. Amand and Michlein talked to sheriff personnel at the booking desk while James stood waiting in his boxer shorts and t-shirt.  A female prisoner in one of the cells, approximately 10 feet from the booking

counter, watched James while he was standing at the booking counter.  Female personnel also watched James at the booking counter.

### E.  Training, Policy and Supervision

Defendant Hardel, Chief of Police of the City of Wausau, is ultimately responsible for the training and monitoring of police procedures of the officers employed by the City of Wausau Police Department.  His deputy chief, two captains and a captain on patrol meet on a regular basis, usually each day.  In addition, defendant Hardel meets with lieutenants on a monthly basis.  According to the mission statement of the Wausau Police Department, the Wausau Police Department should show empathy and compassion for all people with whom they have contact.

## OPINION

### A. Federal Claims

#### 1. Excessive force

Plaintiffs allege that defendants Michlein and St. Amand used excessive force when they arrested him, a claim that arises under the Fourth Amendment.  Graham v. Connor, 490 U.S. 386 (1989); Morfin v. City of East Chicago, 349 F.3d 989, 1004 (7th Cir. 2003).  Under the Fourth Amendment, officers may use only such force as is "'objectively

9

reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 396.  Relevant "facts and circumstances" may include "'the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect was] actively resisting arrest or attempting to evade arrest by flight.'" Smith v. City of Chicago, 242 F.3d 737, 743 (7th Cir. 2001) (quoting Graham, 490 U.S. at 396).  The officers' underlying intent or motivation is irrelevant.  Graham, 490 U.S. at 396.  Determining whether an officer's use of force is objectively reasonable requires weighing the amount of force the arresting officers used against the danger the arrestee posed to the community or to the arresting officers.  Smith, 242 F.3d at 743.

Defendants Michlein and St. Amand had different roles in plaintiff James's arrest. Because, under § 1983, a government official may be held liable only for his or her own misconduct, Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (liability under 42 U.S.C. § 1983 requires defendant's personal involvement in constitutional violation), their alleged misconduct must be considered individually.

Many of the facts related to the arrest are disputed, but on defendants' motion for summary judgment, it is the view most favorable to plaintiffs that matters.  Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).  Even so, the facts supporting plaintiffs' claim against defendant Michlein are weak.  According to plaintiffs, Michlein's participation in James's arrest was limited to helping force James to the ground over a bed

10

of rocks, which James says occurred after the officers were told that his knees were sensitive, and dragging him to the squad car.  In light of the circumstances, no reasonable jury could find that defendant Michlein's use of force was excessive; plaintiff was forced to the ground only after the officers attempted to arrest him and he resisted and he was dragged to the squad car only when he resisted walking on his own.  Although defendant Michlein's participation in these activities may have contributed to the pain plaintiff suffered, the force he used was tied directly to plaintiffs' resistance.  No reasonable jury could find the force used to have been more than was objectively reasonable under those circumstances.

The facts regarding defendant St. Amand's behavior are stronger, enough so that a jury could find that he engaged in excessive force.  According to plaintiffs, defendant St. Amand helped force James to the ground over a bed of rocks after he had been told that James's knees were sensitive, dragged him to the squad car, swung his head into the squad car door opening, chipping his teeth and splitting his lip, struck him in the knee and then put a charged taser in his face.  Although it is undisputed that plaintiff resisted arrest and was loud and belligerent, a reasonable jury could find that defendant St. Amand's use of force was not objectively reasonable under the circumstances.  In particular, if a jury believes plaintiffs that defendant St. Amand swung James's head into the car door opening without trying to protect him and struck him in the knee, it would be possible, if just barely, for it

to find that defendant St. Amand used more force than was reasonable to counter plaintiffs' resistance to arrest.

Although an analysis of the merits would suggest that plaintiff could go to trial on his claim against defendant St. Amand (but not on his claim against defendant Michlein), defendants contend that they are entitled to qualified immunity.  Qualified immunity applies whenever a government official's actions, even if unconstitutional, did not violate the "clearly established law" at the time.  E.g., Pearson v. Callahan, 129 S. Ct. 808, 822 (2009).  Once the defendant has raised a qualified immunity defense, the plaintiff has the burden to show that it should not apply.  Mannoia v. Farrow, 476 F.3d 453, 457 (7th Cir. 2007).  In response to defendants' argument, plaintiffs state simply that the defense "falls away when the acts of the officers are excessive, aggressive, and vindictive" and, in a footnote, recites the facts related to his excessive force claim.  By failing to develop this argument, plaintiffs have failed to meet their burden.

Even if plaintiffs had grappled with the issue, it is unlikely that they could overcome a qualified immunity defense.  In Smith, 242 F.3d at 743-44, the court of appeals held that police officers did not use excessive force when they "pulled Smith out of the car, pinned his arms behind his back, slammed him against the hood of the car and handcuffed him."  The officers could have reasonably believed that Smith was trying to flee because he drove for twelve blocks after the officers played their siren before he finally pulled over.  Smith

12

suggests that a greater amount of force is justified when a suspect is attempting to avoid arrest, even if some of that force is only tenuously related to a risk of flight or escape: there was no suggestion in <u>Smith</u> that the plaintiff had struggled with the officers when they took him out of the car, but the court held that "slamming" him against the hood after he had his arms pinned behind his back was not an excessive use of force. <u>Id.</u> In light of <u>Smith</u>, there is little room to argue that defendant St. Amand's alleged rough treatment of James was in violation of "clearly established law."

2.  <u>"Personal dignity"</u>

Next, plaintiffs argue that defendants violated James's right to "personal dignity" when they refused to allow him to wear his pants (or shoes and socks) and then exposed him to members of the general public in that condition. As an initial matter, plaintiffs struggle to pin down the source of this right to "personal dignity." They devote much discussion to the City of Wausau police department's mission statement and whether defendants followed that mission statement. However, the police department's mission statement does not create a right that is actionable under 42 U.S.C. § 1983 (or any state law that plaintiffs identify).

Plaintiffs come closer when they cite <u>Campbell v. Miller</u>, 499 F.3d 711, 719 (7th Cir. 2007), in which the court held that a police officer violated the Fourth Amendment when he performed an intrusive strip search on a suspect in a place that was visible to others. In

particular, in Campbell, the officer "undid Campbell's belt buckle, pulled his pants partway down, and had him lean forward, separated Campbell's buttocks and did a 'visual inspection'" of his anal cavity.  Id. at 715.  The officers performed this search in Campbell's friend's backyard, which was visible from his friend's house and three other houses surrounding the backyard.  Id.

Campbell suggests that the Fourth Amendment's prohibition of "unreasonable searches and seizures" includes a limitation on performing searches and seizures in ways that are unnecessarily embarrassing or humiliating.   However, in comparison with Campbell, plaintiffs' claim falls short.  James faced significantly less embarrassing exposure than the plaintiff in Campbell, whose buttocks and anus were fully exposed.  For James, it was only his boxers, t-shirt and bare legs and arms.  Although plaintiff suggests that he *could* have had his genitals exposed because sometimes his boxers were open in the front, tellingly there is no evidence that his boxers were open that day or, more important, that defendants were aware of this potential problem.  From the record, it would appear that plaintiff was in attire almost indistinguishable from the typical summer attire of many persons.

Moreover, defendants' conduct is easier to justify than the officer's in Campbell.  In that case, the search was unreasonable because there existed no "conceivable exigency that could be met only by strip-searching Campbell in public, on the spot" after he had been arrested for marijuana use.  Campbell, 499 F.3d at 719.  In this case, it is undisputed that

14

James had been combative and resistant from the moment of his arrest and had been "thrashing around" and kicking at officers.  Under these circumstances, it was not unreasonable for defendant Peterson to decide that his officers and hospital staff should avoid putting themselves at risk of being kicked.

Finally, there is no suggestion that defendants went out of their way to parade James in front of others.  Although it is possible (but disputed) that members of the public saw him, defendants took him from the emergency room to a squad car and to the jail.  Although James was required to stand at booking for a while while defendants Michlein and St. Amand talked to the officer there, at that point he was in the hands of the jail.  Any delay in his booking was a matter for the sheriff's office.

In sum, there is no federal "personal dignity" claim arising out of defendants' mission statement.  To the extent that plaintiff is asserting a Fourth Amendment claim, no reasonable jury could find that defendants' exposure of plaintiff to the public in boxers and a t-shirt was an unreasonable search or seizure under the Fourth Amendment.  Therefore, defendants' motion for summary judgment will be granted as to plaintiffs' "personal dignity" claim.

3.  <u>Claims against defendants Hardel and City of Wausau</u>

15

Plaintiffs' claims against defendants Hardel and City of Wausau relate to defendant Hardel's failure to train and supervise the Wausau police officers, which he alleges led to constitutional violations against him.  Their claims against defendant City of Wausau must be that the allegedly unconstitutional acts were a result of the implementation or execution of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or were undertaken "pursuant to [an informal] governmental custom." Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978).

As I explained above, no reasonable jury could find that defendants violated plaintiffs' constitutional rights by exposing him to the public wearing nothing but a t-shirt and boxers, which means that the City could not be held liable for this behavior, either.  Treece v. Hochstetler, 213 F.3d 360, 364 (7th Cir. 2000).  As for the excessive force claim against defendant St. Amand, plaintiffs do not identify any policy or custom of that may have encouraged St. Amand to use excessive force against plaintiff James when arresting him.

Plaintiffs do little better in their effort to support their claim against defendant Hardel for his failure to train or supervise defendants.  They propose no facts that would allow a jury to reasonably infer that training or supervision of police officers led to the alleged constitutional violation.  (At any rate, the Supreme Court's recent holding in Ashcroft v. Iqbal, No. 07-105, slip op., at 13, 556 U.S. ___ (May 18, 2009), leaves little

room for arguing that a government official may be held liable under § 1983 for failure to train or supervise a bad actor.  As the Court held, supervisors cannot be held liable for mere "knowledge and acquiescence" of their subordinates' unconstitutional acts.  Id.)  Because plaintiffs fail to adduce sufficient evidence to support a § 1983 claim against either Hardel or City of Wausau, I will grant defendants' motion for summary judgment as to plaintiffs' § 1983 claims against these defendants.

B.  State Law Claims

Because I will grant defendants' motion for summary judgment as to plaintiffs' federal claims, I must consider whether it would be proper to proceed on plaintiffs' state law claims. Plaintiffs do not suggest that grounds exist for exercising diversity jurisdiction over the case, so grounds for jurisdiction over the state law claims comes from 28 U.S.C. § 1367.  Under § 1367(c)(3), a federal district court may decline to exercise supplemental jurisdiction over state law claims once federal claims have been dismissed.  As the court of appeals has explained, once a court dismisses federal claims (and there are no separate grounds for original jurisdiction over the state law claims), a district court should consider dismissal under § 1367, which involves weighing judicial economy, convenience, fairness and comity. Wright v. Associated Ins. Companies Inc., 29 F.3d 1244, 1251-52 (7th Cir. 1994).  It is only in certain "unusual" circumstances that those factors will warrant retaining jurisdiction.

17

Id.; see also Hansen v. Board of Trustees, 551 F.3d 599, 608-09 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction."). It may be proper to retain jurisdiction over state law claims under § 1367 when, for example, the statute of limitations has run on a state law claim, substantial judicial resources have been expended on the claims or resolution of the claims is clear. Wright, 29 F.3d at 1251-52; Hansen, 551 F.3d at 608-09.

I conclude that it is proper to retain jurisdiction of this case. First, for all but two of plaintiff's state law claims, the issues have been briefed and resolution of those issues is clear (as I explain below, plaintiffs failed to respond to defendants' arguments on these issues, which constitutes waiver). Khan v. State Oil Co., 93 F.3d 1358, 1366 (7th Cir. 1996) (if correct disposition of supplemental claims is clear, considerations of economy favor retaining jurisdiction).

As for the remaining two state law claims, one is assault, a fairly simple, well established doctrine, and the other is negligent supervision, which involves straightforward principles of tort law, Miller v. Wal-Mart Stores, Inc., 219 Wis. 2d 250, 262-63, 580 N.W.2d 233 (1998), even if it is a "relatively new" concept in Wisconsin as plaintiffs argue, Plt.'s Opp. Br., dkt. #68, at 10 n.6. This means there is little risk of "entanglement with . . . difficult issues of state law." Wright, 29 F.3d at 1251 (likelihood of entanglement with

18

state law issues relevant to § 1367 determination).  Finally, one of the two remaining claims, assault, involves a two-year statute of limitations.  Wis. Stat. § 890.57.  Because the alleged assault occurred on May 21, 2007, any claim arising out of the assault would be susceptible to a statute of limitations defense if plaintiffs were required to file the case in state court. Resolution of the majority of plaintiffs' state law claims is clear, the remaining claims are fairly simple and dismissal would unfairly prejudice plaintiffs.  Therefore, I conclude that it is proper to retain jurisdiction over this case pursuant to § 1367.

I turn to the merits of plaintiffs' state law claims.  First, defendants contend that they are entitled to discretionary act immunity from some of plaintiffs' claims.  However, because those claims and others fall on other grounds, I need not consider defendants' arguments. Defendants argue the merits of plaintiffs' claims for intentional and negligent infliction of emotional distress, battery and a damages claim for "loss of consortium."  In particular, they argue that the facts do not allow a finding either that defendants intended to cause plaintiffs emotional distress during the arrest or that their treatment was extreme or outrageous, elements of a claim for intentional infliction of emotional distress.  <u>Alsteen v. Gehl</u>, 21 Wis. 2d 349, 359-60, 124 N.W.2d 312 (1963).  Addressing plaintiffs' claim for negligent infliction of emotional distress, defendants argue that James's injuries were not serious enough to warrant this kind of liability, citing <u>Bowen v. Lumbermeens Mutual Casualty Co.</u>, 183 Wis.2d 627, 632, 517 N.W.2d 432 (1984).  As for plaintiffs' battery claim, defendants

19

contend that use of force against plaintiff did not constitute battery because it was a "privileged" use of force by police officers acting to enforce the law, citing <u>Wirsing v. Krezeminski</u>, 61 Wis. 2d 513, 519, 213 N.W.2d 37 (1973).  Finally, defendants contend that the facts are not sufficient to establish a claim for "loss of consortium."

Plaintiffs fail to address any of these issues.  The closest they come is a footnote in which they state that Susan "experienced a bystander tort in seeing her husband treated roughly," which was "upsetting to her" and they summarize their version of the arrest.  As the court of appeals has explained, a failure to meaningfully oppose an argument operates as a waiver.  <u>Wojtas v. Capital Guardian Trust Co.</u>, 477 F.3d 924, 926 (7th Cir. 2007) (court held that plaintiff had waived right to challenge defendant's assertion of statute of limitations defense by failing to oppose defendant's argument in response to motion to dismiss); <u>Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co.</u>,  260 F.3d 742, 747 (7th Cir. 2001) (plaintiff's failure to mention defendant's argument regarding scope of insurance policy exclusion treated as "acquiescence" to defendant's interpretation, rendering unnecessary any substantive determination by the court).  Because plaintiffs do not respond to defendants' arguments, they have waived the right to challenge defendants' arguments that:  (1) defendants did not intend to cause plaintiffs emotional distress during the arrest and their treatment of plaintiff was not extreme or outrageous; and (2) the injury to James was not serious enough to warrant liability for negligent infliction of emotional distress; (3)

20

defendants' use of force did not constitute battery because it was a "privileged" use; and (4) the facts do not establish grounds for a claim of loss of consortium. Therefore, I will grant defendants' motion for summary judgment as to plaintiffs' claims for intentional and negligent infliction of emotional distress, battery and loss of consortium.

This leaves plaintiff James's claim for assault against defendants City of Wausau and "its agents" and his claim for negligent supervision against defendant City of Wausau. (Plaintiff Susan's only claims were for infliction of emotional distress.) Defendants do not mention either of these claims in their brief in support of their motion for summary judgment, so defendants are not entitled to summary judgment on them. Celotex v. Catrett, 477 U.S. 317, 323-24 (1986) (party seeking summary judgment bears "initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the record it believes supports its position). Likewise, they do not argue that plaintiff failed to serve the city with notice of his claim, a prerequisite to suit under Wis. Stat. § 893.80(1).

At the same time, it is not clear whether plaintiff James has enough evidence to support either of these claims. Regarding his assault claim, James names only the City of Wausau as a defendant. It is not clear how he may proceed on an assault claim against the City. (He mentions "agents," but he does not identify them, which means he has no assault claim against the other defendants.) As for his negligent supervision claim against the City of Wausau, the evidence he submitted in support of his federal counterpart to that claim

21

gave no suggestion that the City's supervision of its police officers was inadequate.  Rather than let this case proceed to trial as is, it is prudent to assess whether plaintiff James can support his claims.  Therefore, I will allow plaintiff until June 12, 2009 in which to identify what evidence and arguments he has in support of his assault and negligent supervision claims against the City of Wausau.  No response is necessary; the court will determine whether plaintiff James's evidence is sufficient for trial on plaintiffs' filings alone. (Defendants have had an opportunity to move for summary judgment.)


ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendants City of Wausau, Jeffrey Hardel, Joseph St. Amand, Justin Michlein and Thomas Peterson is GRANTED as to plaintiffs James Brach's and Susan Brach's claims that

a.  defendants City of Wausau, Hardel, St. Amand, Michlein and Peterson violated James Brach's constitutional rights when, on May 21, 2007,  defendants St. Amand and Michlein arrested him and defendant Peterson refused to allow him to wear his pants following his arrest.

b.  defendants intentionally or negligently caused plaintiffs emotional distress and loss of consortium and committed battery against plaintiff James Brach when

defendants St. Amand and Michlein arrested him and defendant Peterson refused to allow him to wear his pants following his arrest.

2.  Plaintiff Susan Brach's claims are DISMISSED with prejudice against defendants City of Wausau, Hardel, St. Amand, Michlein and Peterson.

3.  Plaintiff James Brach's claims are DISMISSED with prejudice against defendants Hardel, St. Amand, Michlein and Peterson.

Entered this 22nd day of May, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

23